IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SOFFETTE WALKER,<br>o/b/o D.C.M., a minor,<br><br>                Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                Defendant. | No. 5:14-cv-310 (MTT) (CHW)<br><br>Social Security Appeal |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Soffette Walker's application for benefits filed on behalf of D.C.M., a minor. In accordance with the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff applied for benefits on behalf of D.C.M. in August 2010, claiming that D.C.M. suffers from ADHD and asthma. (R. 73–74). Plaintiff's applications were denied initially and on reconsideration, and in November 2012, a hearing was held before a reviewing administrative law judge ("ALJ"). At the hearing, Plaintiff noted that D.C.M. had previously sought treatment from Dr. Mark Prigatano, Ph.D., and that he was currently receiving treatment from Dr. Samuel Samuel, M.D, who began prescribing medication to Plaintiff in July 2010. (R. 35–38, 49–50). Plaintiff further indicated that D.C.M.'s symptoms were worse when D.C.M. was not taking his medication. (R. 49).

In February 2013, the ALJ issued an unfavorable opinion in which she assigned only "little weight" to a March 2011 mental statement in which Dr. Prigatano opined that D.C.M. suffered from, among other things, marked limitations in his ability to "attend[] and complet[e] tasks;" and to "car[e] for [him]self." (R. 384–86). Rather than crediting Dr. Prigatano's opinion, the ALJ instead assigned "greater weight" to records from Dr. Samuel indicating that Plaintiff's symptoms improved with medication. (R. 19).

The Appeals Council denied review in Plaintiff's case in July 2014, (R. 1–3), and Plaintiff now seeks review before this Court, arguing: (1) that the ALJ erred in failing to list specific rationales in support of her findings at each of the six functional-equivalence domains, and (2) that the ALJ erred in discounting Dr. Prigatano's opinion in favor of Dr. Samuels' records. Because substantial evidence supports the Commissioner's decision, it is recommended that the Court affirm.

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner.

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); s*ee also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. Even if the evidence preponderates against the Commissioner's decision, though, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons under the age of 18 are "disabled" for purposes of receiving Title XVI benefits if they have "a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

When analyzing the issue of disability for persons under the age of 18, the ALJ uses a three-step sequential evaluation procedure. 20 C.F.R. § 416.924(a). At step one, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). At step two, if the child is not engaged in substantial gainful activity, the ALJ determines whether the child has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). At step three, the ALJ determines whether the child's impairment or combination of impairments meets or is medically or functionally equal to one of the listings, and otherwise satisfies the duration requirement. 20 C.F.R. § 416.924(d).

To determine whether the child's impairment functionally equals a listed impairment, the ALJ must consider six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To satisfy the "functional equivalent" standard, the child must have either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

### DISABILITY EVALUATION IN THIS CASE

Following the three-step evaluation procedure set forth in 20 C.F.R. § 416.924(a), the reviewing ALJ issued an unfavorable decision on February 8, 2013. (R. 13–26). At step one, the ALJ found that D.C.M. had not engaged in substantial gainful activity since at least August 10, 2010, the application date. (R. 16). At step two, the ALJ found that Plaintiff suffered from the following "severe" impairments: "attention deficit hyperactivity disorder, a mood disorder, and asthma." (R. 16). At step three, the ALJ found that D.C.M. did not have an impairment or

4

combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16).

The ALJ also determined that D.C.M. did not have an impairment or combination of impairments that functionally equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ considered the six "domains" and determined that D.C.M. had: (1) a less-than-marked limitation in acquiring and using information; (2) a less-than-marked limitation in attending and completing tasks; (3) a marked limitation in interacting and relating with others; (4) a less-than-marked limitation in moving about and manipulating objects; (5) a less-than-marked limitation in the ability to care for himself; and (6) a less-than-marked limitation in health and physical well-being. (R. 20–25). Based on these findings, the ALJ concluded that D.C.M. was not "disabled" within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises two grounds for relief, neither of which warrants a remand in this case. Plaintiff first argues that the ALJ's "functional equivalence" assessment is legally deficient because the ALJ failed to list specific rationales for her findings. (Doc. 12, pp. 6–8). In Plaintiff's words, "the ALJ simply indicated her preference for the level of limitation that Plaintiff had with one-sentence reviews of the domains while ignoring the medical and education evidence." (Doc. 12, p. 7). As the Commissioner notes, though, this Court need not consider the ALJ's functional-equivalence findings in isolation, but instead may review the ALJ's opinion as a whole to determine whether the ALJ's findings are supported by substantial evidence in the record. *See, e.g.*, *Blackshear v. Astrue*, 2012 WL 3231023 at *5 (S.D. Ga. 2012) (citing *Turberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009), and *Johnson v. Barnhart*, 148 F. App'x 838, 842 (11th Cir. 2005)). Because the ALJ in this case adequately

summarized and assessed the medical evidence at length elsewhere in her opinion, (R. 17–20), and because the ALJ's opinion as a whole supports her functional equivalence findings, there is no basis to conclude that the ALJ's opinion is legally deficient or that meaningful judicial review is not possible.

Plaintiff second argues that the ALJ's assessment at domains two ("attending and completing tasks") and five (self-care) was inconsistent with a mental statement completed by Dr. Mark Prigatano, a treating psychologist who opined in March 2011 that D.C.M. had "severe" inattention, impulsiveness and hyperactivity; and "marked" limitations in cognitive/communicative functioning; social functioning; concentration, persistence and pace; "attending and completing tasks;" and "caring for self." (R. 384–86). Plaintiff claims that the ALJ's decision to assign only "little weight" to Dr. Prigatano's opinion is not supported by substantial evidence, but the record indicates otherwise.

The ALJ discounted Dr. Prigatano's opinion for two reasons: (i) because Dr. Prigatano "had not seen the claimant in six months" when he completed his mental statement in March 2011; and (ii) because "Dr. Samuel indicated that the claimant had a good response to medication." (R. 19). Although Plaintiff correctly notes that the ALJ appears to have erred with regard to her first reason for discounting Dr. Prigatano's opinion—Dr. Prigatano in fact saw D.C.M. in November 2010, (R. 364), and also completed a mental impairment questionnaire in January 2011, (R. 361)—the ALJ's second reason for discounting Dr. Prigatano's opinion is supported by substantial evidence. Beginning in July 2010, when Dr. Prigatano first referred D.C.M. to Dr. Samuel, (R. 332), D.C.M. began taking a series of medications including Concerta, Ritalin, Zoloft, Tofranil, Adderall, Focalin, and Risperdal. (Ex. 4F, 14F). Numerous progress notes from Dr. Samuel, many of which post-date Dr. Prigatano's March 2011 mental

statement, indicate that D.C.M., when compliant with his medication, experienced an improvement in the limitations caused by his psychological impairments. (*Id.*). Given Dr. Samuel's records, it was not unreasonable for both the State Agency evaluator, (R. 350), and the ALJ to conclude that Plaintiff's symptoms improved with medication.

Plaintiff argues that the ALJ should have recontacted Dr. Prigatano, but as the Commissioner notes, the ALJ discounted Dr. Prigatano's opinion not because of any ambiguity, but rather because Dr. Samuel's records undermined Dr. Prigatano's opinion. (Doc. 13, p. 8). Because the ALJ adequately articulated the inconsistency between these records, there is no basis to conclude that her decision to discount Dr. Prigatano's opinion was an error. *See, e.g.*, *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004) ("The opinion of a treating physician . . . must be given substantial or considerable weight unless 'good cause' is shown to the contrary"). Furthermore, because Dr. Samuel's records do not support findings of "marked" limitations at domains two and five, as argued by Plaintiff, there is no basis for the Court to disturb the Commissioner's decision below.

## CONCLUSION

After a careful consideration of the record, it is **RECOMMENDED** that Plaintiff's case be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and

recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 6th day of May, 2015.

                                            s/ Charles H. Weigle
                                            Charles H. Weigle
                                            United States Magistrate Judge